1   Jason A. Imes Esq., NV Bar No. 7030
2   Fox, Imes & Crosby LLC
    601 S. 10th Street, Suite 202
3   Las Vegas, Nevada 89101
    Telephone:      (702) 382-1007
4   Facsimile:      (702) 382-1921
    E-Mail:         info@FICLegal.com
5   *Attorneys for Troy S. Fox, Chapter 7 Trustee*

6                **UNITED STATES BANKRUPTCY COURT**

7                      **DISTRICT OF NEVADA**

8   In re METAL PARTNERS REBAR, LLC,        Case No. BK-S-20-12878-ABL **(Lead Case)**

9                                   Debtor.   **Jointly Administered with:**

10  ☒ Affects Metal Partners Rebar, LLC      Case No. BK-S-20-12876-ABL
11  ☐ Affects BGD LV Holding, LLC            Case No. BK-S-20-12879-ABL
                                             Case No. BK-S-20-12880-ABL
    ☐ Affects BRG Holding, LLC
12  ☐ Affects BCG Ownco, LLC                 Chapter 7

13                                           **Adversary Proceeding: 23-01069-ABL**

14  ────────────────────────────────
    TROY S. FOX, CHAPTER 7 TRUSTEE,          **TRUSTEE'S MOTION TO APPROVE**
15                                           **SETTLEMENT AGREEMENT WITH**
                                             **TRAXYS NORTH AMERICA LLC**
                                    Plaintiff, **(FRBP 9019)**
16
17  v.                                       Hearing Date:  June 13, 2023
                                             Hearing Time:  10:00 a.m.
18  TRAXYS NORTH AMERICA LLC,

19                                 Defendant.
    ────────────────────────────────

20          TROY S. FOX (the "Trustee"), Chapter 7 Trustee for the jointly administered bankruptcy

21  estates of Metal Partners Rebar, LLC, BGD LV Holding, LLC, BRG Holding, LLC, and BCG

22  Ownco, LLC, by and through his counsel, Fox, Imes & Crosby, LLC, files this *Motion for*

23  *Approval of Settlement Agreement with Traxys North America LLC* (the "Motion") pursuant to

24  Fed.R.Bankr.P. 9019.

25          **Pursuant to Local Rule 9019(d), this Motion to approve settlement is being filed**

26  **concurrently in the main bankruptcy case (Case No. 20-128780-ABL), in the related**

27  **adversary proceeding Traxys North America, LLC v. Metal Partners Rebar, LLC, et al.**

28

**Fox, Imes & Crosby, LLC**
601 S. 10th Street, Suite 202
Las Vegas, Nevada 89101
Tel: (702) 382-1007 · Fax: (702) 382-1921

1  (Adv. Proc. No. 20-01005-ABL), and in the related adversary proceeding, <u>Troy S. Fox,</u>

2  <u>Trustee v. Traxys North America, LLC</u> (Adv. Proc No. 23-01069-ABL).

3      The Trustee seeks approval of a settlement agreement negotiated between the Trustee and

4  Traxys North America LLC ("<u>Traxys</u>") following a settlement conference before the Honorable

5  Gregg W. Zive to resolve Traxys' various proof of claims filed against the bankruptcy estates,

6  Traxys' pending claims against debtors Metal Partners Rebar, LLC ("<u>MPR</u>"), and BGD LV

7  Holding, LLC ("<u>BGD</u>") in its related adversary proceeding captioned as <u>Traxys North America</u>

8  <u>LLC v. Metal Partners Rebar LLC</u>, et al., Adv. Pro. No. 21-01005-ABL (the "<u>Traxys Adversary</u>

9  <u>Proceeding</u>") and the Trustee's adversary proceeding against Traxys for avoidance and recovery of

10  transfers and disallowance of claims captioned as <u>Troy S. Fox, Trustee v. Traxys North America,</u>

11  <u>LLC</u> (Adv. Proc No. 23-01069-ABL) (the "<u>Trustee's Avoidance Action</u>").

12      The terms of the proposed settlement agreement (the "<u>Settlement Agreement</u>") are set forth

13  in attached **Exhibit "1"** and this Motion is supported by the *Declaration of Troy S. Fox* (the "<u>Fox</u>

14  <u>Declaration</u>"), filed concurrently with this Motion, and the following Points and Authorities.

15      In general terms, the proposed Settlement Agreement provides:

16      A.      Traxys' proofs of claim will be deemed an allowed unsecured claim against the

17  MPR and BGD bankruptcy estates in the sum of $24,475,000.00 which represents a reduction of

18  $9,959,144.00 from Traxys' original filed claims that total $33,434,144.00;

19      B.      Traxys had asserted its claims were secured, but has agreed that its claim will be

20  now be treated as an <u>unsecured</u> non-priority claim for purposes of distribution with similarly

21  situated creditors; and

22      C.      Upon approval, Traxys will dismiss MPR and BGD from the Traxys Adversary

23  Proceeding and waive and release any other related claims against the respective estates, and the

24  Trustee will dismiss the Trustee's Avoidance Action and waive and release any related claims.

## I. JURISDICTION

26      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is

27  a core proceeding pursuant to 28 U.S.C. §157(b).  Venue is proper before this Court pursuant to 28

28  U.S.C. §§ 1408 and 1409.

FOX, IMES & CROSBY, LLC
601 S. 10ᵗʰ Street, Suite 202
Las Vegas, Nevada 89101
Tel: (702) 382-1007 · Fax: (702) 382-1921

## II.  CASE BACKGROUND

A.    **The Traxys / MPR / BGD Joint Venture Agreement**

1.    Traxys alleges in the Traxys Adversary Proceeding that on or about March 1, 2018, Traxys entered into a Joint Venture Agreement (the "JVA") with MPR and BGD under which those parties generally agreed, among other things, that Traxys would purchase and supply rebar raw materials to be used by MPR and BGD to fabricate finished rebar products to be sold by the joint venture with all sales to be invoiced in Traxys' name for direct payment to Traxys.

2.    The JVA generally provided that Traxys was the sole owner of all rebar raw materials purchased for the joint venture, all finished rebar products produced by the joint venture, and all accounts receivable generated from sales by the joint venture.

3.    It appears that on or about March 1, 2018, and in connection with the JVA, Traxys extended a term loan of $522,256 to BGD (the "BGD Loan"), which BGD used to finance the purchase of certain equipment (the "BGD Equipment") for use at BGD's fabrication facility located in North Las Vegas, Nevada.  In connection with the BGD Loan, Traxys and BGD entered into a Loan and Security Agreement under which BGD pledged substantially all of its assets, including the BGD Equipment, as collateral.

4.    In addition to activities occurring under the JVA, Traxys also sold rebar raw materials to MPR for use in its business operations outside of the joint venture.

5.    Traxys alleges that by the fourth quarter of 2019, MPR had fallen delinquent in payments owed to Traxys for sales of raw materials for use in MPR's business operations outside of the joint venture, and BGD had fallen delinquent in payments owed to Traxys under the BGD Loan.

6.    In or around November 2019, Traxys concluded that millions of dollars in joint venture customer payments should have been paid directly to Traxys but were collected by MPR and deposited in an account at JPMorgan Chase Bank, N.A. ("Chase") and used to pay indebtedness owed by MPR to Chase.

7.    On or about January 17, 2020, Traxys entered into a Settlement with MPR, BGD, and various affiliated parties (the "January 2020 Settlement") under which, among other things, it

FOX, IMES & CROSBY, LLC
601 S. 10th Street, Suite 202
Las Vegas, Nevada 89101
Tel: (702) 382-1007 • Fax: (702) 382-1921

1  was generally agreed (i) MPR would pay to Traxys all joint venture customer funds it had

2  previously collected and promptly forward to Traxys any future joint venture customer payments

3  it might receive, (ii) MPR would make all rebar raw materials and finished rebar products in its

4  possession and owned by Traxys available to be purchased by Intermetal Rebar, L.L.C., which

5  was also a party to the January 2020 Settlement, (iii) BGD would pay all amounts due and owing

6  in connection with the BGD Loan, and (iv) certain accounts payable between Traxys and MPR

7  would be offset, leaving a net payable to be paid by MPR to Traxys.

8      8.      Traxys alleges that MPR and BGD failed and refused to perform their obligations

9  under the January 2020 Settlement.

10      9.      On April 2, 2020, Traxys filed a complaint in the United States District Court for

11  the Southern District of New York (the "New York Court"), commencing an action (the "New

12  York Action") against MPR, BGD, ADR Rebar, LLC ("ADR"), Jose Carrero ("Carrero"),

13  Intermetal Rebar, LLC ("Intermetal"), and Chase.

14      10.      On May 11, 2020, Traxys entered into an agreement with MPR, BGD, and Chase

15  (the "May 2020 Agreement") by which those parties agreed, among other things, to segregate and

16  preserve funds collected on account of certain receivables identified therein.

**A.      MPR and related Entities File for Bankruptcy Protection in Nevada**

18      11.      On June 16, 2020 (the "Petition Date"), MPR and BGD, along with BRG Holding,

19  LLC ("BRG"), and BCG Ownco, LLC ("BCG"), filed voluntary chapter 11 petitions in the United

20  States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court").

21      12.      On June 19, 2020, the Bankruptcy Court entered an order directing the joint

22  administration of the chapter 11 cases of MPR, BGD, BRG, and BCG (together, the "Chapter 11

23  Case") under the chapter 11 case of MPR, Case No. 20-12878-ABL.

24      13.      On September 10, 2020, the New York Court entered an order transferring the New

25  York Action to the United States District Court for the District of Nevada (the "Nevada Court")

26  for automatic referral to the Bankruptcy Court.

27      14.      On October 5, 2020, Traxys filed similar Proofs of Claim in the chapter 11 cases of

28  MPR [Claim 70], BGD [Claim 2], BRG [Claim 3], and BCG [Claim 5] by which Traxys asserted

FOX, IMES & CROSBY, LLC
601 S. 10th Street, Suite 202
Las Vegas, Nevada 89101
Tel: (702) 382-1007 · Fax: (702) 382-1921

1    secured claims in the total sum of $33,000,000 based primarily on amounts allegedly owed to

2    Traxys under the JVA and the January 2020 Settlement (the "Traxys JVA Claim").

3        15.    On October 5, 2020, Traxys also filed similar Proofs of Claim in the chapter 11

4    cases of MPR [Claim 72], BGD [Claim 3], BRG [Claim 4], and BCG [Claim 6] by which Traxys

5    asserted a secured claim in the amount of $434,144 based primarily on amounts allegedly owed to

6    Traxys in connection with the BGD Loan (the "Traxys BGD Loan Claim").

7        16.    On October 14, 2020, the Bankruptcy Court entered its *Order Authorizing (a) the*

8    *Sale of Substantially of the Debtors' Assets Free and Clear of Claims, Liens, and Encumbrances,*

9    *and (b) the Assumption and Assignment of Executory Contracts and Unexpired Leases* [ECF No.

10    484] (the "Sale Order") in the Chapter 11 case pursuant to which substantially all of the assets of

11    MPR, BGD, BRG, and BCG were subsequently sold and conveyed to JRC OpCo, LLC.

12        17.    On December 2, 2020, the Bankruptcy Court entered its *Order Granting Debtors'*

13    *Motion for an Order Approving the Sale of Certain Remaining Equipment in North Las Vegas*

14    *Facility Free and Clear of Claims, Liens, and Encumbrances, and Waiver of the Stay of*

15    *Effectiveness of the Order* [ECF No. 575] (the "Equipment Sale Order").

16        18.    Pursuant to the Equipment Sale Order, the Bankruptcy Court, among other things,

17    (i) approved the sale of the BGD Equipment for $300,000 free and clear of Traxys' security

18    interest, (ii) ordered that the sale proceeds be paid directly to Traxys, and (iii) approved the

19    allowance of the Traxys BGD Loan Proof of Claim in the amount of $425,476 subject to reduction

20    by the sales proceeds paid to Traxys and subject Traxys' right to seek interest and attorney fees.

21        19.    On January 4, 2021, the Nevada Court entered an order referring the New York

22    Action to the Bankruptcy Court for adjudication as an adversary proceeding [Case No. 21-01005-

23    ABL] (the "Traxys Adversary Case") in connection with the Chapter 11 Case.

24        20.    On April 1, 2022 (the "Conversion Date"), the Bankruptcy Court entered an order

25    [ECF No. 739] converting the jointly administered Chapter 11 cases to cases under Chapter 7

26    (together, the "Chapter 7 Case"), and Trustee Fox was appointed as trustee for the jointly

27    administered estates of MPR, BGD, BRG and BCG [ECF No. 741].

28

FOX, IMES & CROSBY, LLC
601 S. 10th Street, Suite 202
Las Vegas, Nevada 89101
Tel: (702) 382-1007 • Fax: (702) 382-1921

21.     The Trustee has investigated the basis for the Traxys JVA Claim and the Traxys BGD Loan Claim and has concluded that the same are, at least in part, meritorious.

22.     On March 28, 2023, the Trustee filed an *Adversary Complaint to Avoid and Recover Transfers pursuant to 11 U.S.C. §§ 544, 547, 548 and 550 and to Disallow Claims pursuant to 11 U.S.C. § 502* [Adversary Proceeding No. 23-01069-ABL] against Traxys (the "Trustee's Adversary Complaint").

23.     To avoid the expense of continued litigation, and being fully advised in the matters addressed herein, the Trustee and Traxys have negotiated a compromise and wish to resolve all disputes between them relating to or arising from the Traxys JV Claim, the Traxys BGD Loan Claim, the Chapter 7 Case, the Traxys Adversary Proceeding, and/or the Trustee's Adversary Complaint on the terms and conditions set forth in the proposed Settlement Agreement attached to this Motion as **Exhibit "1"**.

24.     In general terms, the proposed Settlement Agreement provides:

A.     Traxys' proofs of claim will be deemed an allowed unsecured claim against the MPR and BGD bankruptcy estates in the sum of $24,475,000.00 which represents a reduction of $9,959,144.00 from Traxys' original filed claims that total $33,434,144.00;

B.     Traxys had asserted its claims were secured, but has agreed that its claim will be now be treated as an unsecured non-priority claim for purposes of distribution with similarly situated creditors; and

C.     Upon approval, Traxys will dismiss MPR and BGD from the Traxys Adversary Proceeding and waive and release any other related claims against the respective estates, and the Trustee will dismiss the Trustee's Avoidance Action and waive and release any related claims.

25.     The Trustee has determined in this business judgment that this proposed Settlement Agreement with Traxys is appropriate and is in the best interest of the estate and creditors.

/ / /

/ / /

FOX, IMES & CROSBY, LLC
601 S. 10th Street, Suite 202
Las Vegas, Nevada 89101
Tel: (702) 382-1007 · Fax: (702) 382-1921

### III.  MEMORANDUM OF LAW

**A.     Standard for Approval of the Settlement.**

Fed.R.Bankr. P. 9019(a) provides that, after notice and a hearing, a Court may approve a Trustee's proposed settlement of a claim.  Whether a compromise should be accepted or rejected lies within the sound discretion of the Court.  In re Carson, 82 B.R. 847 (Bankr. S.D. Ohio 1987); In re Ericson, 6 B.R. 1002 (D. Minn. 1980); Knowles v. Putterbaugh (In re Hallet), 33 B.R. 564 (Bankr. D. Me. 1983); In re Mobile Air Drilling Co., Inc., 53 B.R. 605 (Bankr. N.D. Ohio 1985); In re Hydronic Enterprise, Inc., 58 B.R. 363 (Bankr. D. R.I. 1986).

The Ninth Circuit in Martin v. Kane (In re A & C Properties), 784 F.2d 1377, 1381 (9th Cir. 1986), cert. denied, 479 U.S. 854 (1986) has stated:

> In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Id. (quoting In re Flight Transportation Corp. Securities Litigation, 730 F.2d 1128, 1135 (8th Cir. 1984) (citations omitted), cert. denied, 105 S.Ct. 1169 (1985)).

Notably, a court should refrain from substituting its own judgment for the judgment of the party charged with operation and maintenance of the estate.  In re Carla Leather, Inc., 44 B.R. at 465.  As the Second Circuit has stated, in reviewing a proposed settlement a court should not "decide the numerous questions of law and fact . . . but rather canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."  In re W.T. Grant & Co., 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 822 (1983).  A "mini-trial" on the merits of the underlying cause of action is not required and should not be undertaken by the bankruptcy court.  In re Blair, 538 F.2d 849 (9th Cir. 1976); In re Walsh Construction, Inc., 669 F.2d 1325 (9th Cir. 1982).

Weighing the foregoing factors as set forth below, the Trustee believes that the proposed Settlement Agreement satisfies the A & C Properties factors and is in the best interest of the estate

FOX, IMES & CROSBY, LLC
601 S. 10th Street, Suite 202
Las Vegas, Nevada 89101
Tel: (702) 382-1007 · Fax: (702) 382-1921

and creditors. *See* Fox Declaration.

**B.      Application of A&C Properties Factors**

       **1.      Probability of Success**

          (a).      Reducing Traxys' Proofs of Claim by $9,959,144

During the Chapter 11 phase of this case, Traxys filed proofs of claim against the Debtors in the sum of $33,000,000.00 based on amounts allegedly due under their joint venture agreement (the Traxys JVA Claim), and Traxys also filed proofs of claim in the sum of $434,144.00 against the Debtors for amounts allegedly due under the BGD Loan agreement (the Traxys BGD Loan Claim) (collectively the "Traxys Claim"). The Trustee has reviewed the available materials and information and concluded Traxys has demonstrated some justifiable claims against the Debtors, but the total amounts claimed ($33,434,144.00) warranted further scrutiny. The Unsecured Creditors Committee reached a similar conclusion during the Chapter 11 phase of this case and had worked extensively with Traxys to review and adjust the claims.

The first component of the proposed Settlement Agreement is a reduction of the Traxys JVA Claim and the Traxys BGD Loan Claim down to an aggregate claim of $24,475,000, which represents a reduction of $9,959,144.

The Traxys Claim is composed of essentially five aspects which have been considered for reduction under the proposed settlement agreement and are summarized as follows:

          (i).      $425,000 Balance on BGD Loan (to be reduced to $125,000). With regard to the Traxys BGD Loan Claim, it appears this pre-petition loan balance was approximately $425,000. When the Debtors' remaining equipment was purchased during the Chapter 11 phase by JRC OpCo, LLC [ECF No. 575] for $300,000, those sales proceeds were paid to Traxys pursuant to the sale order which reduced the remaining balance of the Traxys BGD Loan Claim to approximately $125,000, and Traxys has agreed to this reduction of its claim.

          (ii).      $10,700,000 for Missing Inventory (reduced to $8,250,000). Traxys claimed $10,700,000 for missing inventory purchased by Traxys and delivered to Debtor MPR. The amount consists of inventory on the ground ($9,300,000) and inventory that was ordered or in transit ($1,400,000). The inventory figures were derived from analysis of the Debtor's Soule'

FOX, IMES & CROSBY, LLC
601 S. 10th Street, Suite 202
Las Vegas, Nevada 89101
Tel: (702) 382-1007 · Fax: (702) 382-1921

FOX, IMES & CROSBY, LLC
601 S. 10th Street, Suite 202
Las Vegas, Nevada 89101
Tel: (702) 382-1007 · Fax: (702) 382-1921

1  software system. Traxys subsequently received approximately $1,350,000 from the sale of a

2  portion of the inventory in August 2020 [ECF Nos. 303 and 307], and acknowledged

3  approximately $1,120,000 from separate sales of inventory to third parties. As such, Traxys agrees

4  to reduce this aspect of its claim to $8,250,000.

5                (iii).    $1,600,000 for Unpaid Accounts Receivable (not reduced).

6  Pursuant to a pre-petition settlement agreement between Traxys, Debtor MPR, and Debtor BGD

7  dated January 17, 2020 ("January 2020 Settlement Agreement"), those parties agreed to offset

8  certain accounts receivable owed by Debtor MPR to Traxys (in the sum of $4,198,927) against

9  certain invoices issued by Debtor MPR to Traxys (in the sum of $3,200,000) leaving a net account

10  balance owed to Traxys. After subsequent review of additional invoices during discovery, the

11  account receivable portion was increased by $74,359, and the invoice credit was reduced by

12  $219,186. Per Paragraph 4 of the January 2020 Settlement Agreement, the sum of the invoice

13  credit ($2,980,814) was then adjusted to 90% (to $2,682,733) before being offset against the

14  updated accounts receivable balance ($4,273,287) resulting in a balance of $1,590,554. As such,

15  the available information indicates the sum of approximately $1,600,000 appears to still be owed

16  by Debtor MPR to Traxys for these net unpaid accounts receivable. A copy of the January 2020

17  Settlement Agreement is attached to the *Declaration of Frank Bergren* [ECF No. 141] as Exhibit 5

18  (pages 55-62 of 121).

19                (iv).    $4,800,000 for ADR Rebar Receivables (reduced to $0).    It appears

20  that on or about November 5, 2019, ADR Rebar, LLC, an affiliate entity with common ownership,

21  formally assigned its accounts receivable to Traxys, up to the sum of $4,830,748.13, to encourage

22  Traxys to continue delivering non-joint venture materials to Debtor MPR after Debtor MPR fell

23  behind in payment of non-joint venture invoices to Traxys. A copy of this Assignment of

24  Accounts Receivable from ADR Rebar, LLC is attached to the *Declaration of Frank Bergren*

25  [ECF No. 141] as Exhibit 9 (pages 120 and 121). The subsequent January 2020 Settlement

26  Agreement [ECF No. 141] references and incorporates that assignment from ADR Rebar, LLC,

27  and recognizes that Traxys filed a UCC-1 Financing Statement purportedly perfecting its secured

28  interest in the ADR receivables. This aspect of the original Traxys Claim, however, appears to

1  overlap with its claims for recovery of inventory or amounts owed under the joint venture

2  agreement, so this aspect of the Traxys Claim has been removed in its entirety.

3          (v).    $14,500,000 Collected by MPR under Joint Venture Agreement.

4  Traxys also asserted that $14,500,000.00 in customer funds were misappropriated by Debtor MPR

5  in breach of their joint venture agreement. This amount appears to be supported by a subsequent

6  settlement agreement between Traxys, Debtor MPR, and Debtor BGD dated May 11, 2020 (the

7  "May 2020 Settlement") reflecting further attempts to resolve their dispute. A copy of the May

8  2020 Settlement Agreement is attached to the *Declaration of Frank Bergren* [ECF No. 141] as

9  Exhibit 8 (pages 77-118 of 121). The May 2020 Settlement Agreement indicates total receivables

10  in the sum of $18,074,762.03, and Traxys claims the current balance (approximately $14,500,000)

11  by referencing Debtors' bank records for 2019 and 2020, and transactions from 2020 purportedly

12  reported by Debtor MPR's Soule' system. With the information available, including the prior

13  settlement agreements, $14,500,000 appears to still be potentially owed by Debtor MPR to Traxys

14  for these net unpaid accounts receivable.

15       The Trustee has concluded that Traxys has at least made a prima facie justification for

16  allowance of a claim in the reduced aggregate sum of $24,475,000. This represents a reduction of

17  the Traxys Claim by $9,959,144 under the terms of the proposed Settlement Agreement for the

18  benefit of other creditors. The Trustee has determined in his business judgment that litigating

19  against Traxys to try and further reduce these numbers is unlikely to result in a higher net benefit

20  for the estate and creditors.

21       A procedurally compliant proof of claim is prima facie evidence of the validity and amount

22  of the claim. Rule 3001(f) Hardin v. Gianni (In re King St. Invs.), 219 B.R. 848, 858 (B.A.P. 9th

23  Cir. 1998). The available information supports the reduced claim amount, and the Trustee

24  has determined there is also a tangible risk that the Court could conclude the Trayxs Claim

25  as filed meets the standard for allowance, which could in turn result in a substantially

26  larger claim against the Debtors' bankruptcy estates. As such, the Trustee has concluded

27  the proposed reduction of the Traxys Claim under the proposed Settlement Agreement is

28  appropriate.

FOX, IMES & CROSBY, LLC
601 S. 10ᵗʰ Street, Suite 202
Las Vegas, Nevada 89101
Tel: (702) 382-1007 · Fax: (702) 382-1921

1

<u>(b).</u>    <u>Recharacterizing Traxys' Claim as a Non-Priority Unsecured Claim</u>

2

The second component of the proposed Settlement Agreement is a recharacterization of the

3 Traxys Claim from secured to a non-priority unsecured claim, and this will accordingly provide

4 more funds for distribution to other non-priority unsecured creditors. Traxys has attached UCC-1

5 Financing Statements to its proofs of claim that were filed pre-petition and appear to cover the

6 entire inventory and receivables under their joint venture agreement (*see e.g.*, MPR Proof of Claim

7 No. 70, pages 167-169 of 265). Additionally, the January 2020 Settlement Agreement and the

8 May 2020 Settlement Agreement with the Debtors contemplate that Traxys has a secured claim

9 covering the receivables, the inventory, and the related equipment related to Debtor MPR. These

10 materials create a strong indication that Traxys may have properly perfected a secured claim in the

11 assets of Debtor MPR.

12

Proceeds of avoidance and recovery claims under Chapter 5 of the Bankruptcy Code may

13 remain subject to secured claims by creditors. In re Figearo, 79 B.R. 914, 918 (Bankr. D. Nev.

14 1987) ("Any property recovered by the trustee was subject to Haley's security interest at the time

15 the debtor transferred the property to Pacific and continued in the property after the transfer.").

16 The Trustee has determined there is still a tangible risk that the Court could conclude Traxys has a

17 secured claim in other assets collected by the Trustee which would in turn diminish the funds

18 available for other unsecured claimants.

19

As a term of the proposed Settlement Agreement, Traxys has agreed to recharacterize its

20 claims as a non-priority unsecured claim, and this will result in a benefit to the other unsecured

21 creditors of this estate by making more assets available for distribution.

22

<u>(c).</u>    <u>Trustee Avoidance Action</u>

23

The third component of the proposed Settlement Agreement will resolve the Trustee's

24 Avoidance Action against Traxys for avoidance and recovery of transfers under 11 U.S.C. § 544,

25 547, 548 and 550 and for disallowance of claims pursuant to § 502. The Trustee did not identify

26 any transfers from Debtor MPR to Traxys during the 90-day pre-petition lookback period in the

27 banking records or accounting materials, and none are disclosed in the schedules. One wire

28

FOX, IMES & CROSBY, LLC
601 S. 10th Street, Suite 202
Las Vegas, Nevada 89101
Tel: (702) 382-1007 · Fax: (702) 382-1921

1   transfer in the sum of $16,867.08 was made on January 24, 2020 (likely pursuant to the January

2   settlement agreement with the Debtor), but it is outside the 90-day preference period (May 18,

3   2020 through June 16, 2020). The Trustee identified numerous post-petition transfers to Traxys,

4   but it appears these transfers were authorized by the Court and therefore not avoidable under 11

5   U.S.C. §549.

6        The Trustee and his counsel did identify, however, at least $9,849,345.38 transferred by

7   Debtor MPR to Traxys during the 1-year preference lookback period for insiders. As a preliminary

8   hurdle, Traxys has asserted that it holds a secured claim and could argue that as a secured creditor

9   it did not receive better or more favorable treatment than it would have in a hypothetical

10   liquidation, which could mean the subject transfers do not meet the threshold definition of

11   avoidable preferential transfers under § 547(b)(5).

12        While Traxys may not be an "insider" as defined in the applicable statute, the Trustee has

13   asserted that Traxys is subject to a one-year preference lookback because it qualifies as a "non-

14   statutory insider." This claim arose because of the word "includes" at the beginning of the

15   Bankruptcy Code's definition of insider: "The term 'insider' includes . . . ". (See Bankruptcy Code

16   at Section 101(31).) This suggests that "insiders" includes people and entities listed in the

17   statutory definition, and it may also include others. Federal courts have explicitly acknowledged

18   that there are "statutory insiders"—those listed in the Bankruptcy Code's definition—and "non-

19   statutory" insiders—those not so listed.

20        The Ninth Circuit, for example, has recognized two kinds of insiders: (i) statutory insiders

21   (those specifically listed among the examples given in Bankruptcy Code section 101(31)) and (ii)

22   non-statutory insiders (those insiders that do not fit squarely within one of the examples provided

23   in the text of section 101(31)), and concluded that insiders are those who have a "sufficiently close

24   relationship with a debtor to warrant special treatment." In re The Vill. at Lakeridge, LLC, 814

25   F.3d 993, 999 (9th Cir.2016). Granted, this Lakeridge case was analyzed in the context of voting

26   on a plan, rather than a preference avoidance claim, but it is analogous.

27        The Lakeridge case was affirmed by the U.S. Supreme Court which noted that this is a

28   mixed question of law and fact, and that courts have added to the number of insiders and due to

FOX, IMES & CROSBY, LLC
601 S. 10th Street, Suite 202
Las Vegas, Nevada 89101
Tel: (702) 382-1007 • Fax: (702) 382-1921

"the word "includes" in [Section 101(31)], courts have long viewed its list of insiders as non-exhaustive. See §102(3) (stating as one of the Code's "[r]ules of construction" that "'includes' and `including' are not limiting"). <u>U.S. Bank Nat. Ass'n v. Vill. at Lakeridge</u>, 138 S. Ct. 960 (2018).

Trayxs does not meet the definition of a "statutory insider" under 11 U.S.C. § 101(31), but it might still be a "non-statutory insider" if the Trustee can demonstrate Traxys had a sufficiently close relationship with the Debtor so their dealings were not at arm's-length when the transfers were made. <u>Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman)</u>, 126 B.R. 63, 70 (9th Cir. BAP 1991). In this case, it appears Traxys was very likely underpaid during the joint venture agreement, but the Trustee believes it may be difficult to prove Traxys was running Debtor MPR's business or was involved in Debtor's management or operations to a degree that it would be considered a non-statutory insider. Without that finding, the Trustee would be limited to the 90-day pre-petition lookback period for Traxys which is devoid of transfers.

Based on these considerations, the Trustee has concluded that dismissing the Trustee's Avoidance Action as an additional condition of this proposed Settlement Agreement is consistent with the interests of creditors.

(d).    <u>Traxys Adversary Claims Against MPR and BGD Estates</u>

The fourth component of the proposed Settlement Agreement is dismissal of Debtor MPR and Debtor BGD from the Traxys Adversary Proceeding. Traxys named Debtor MPR and Debtor BGD as defendants in the Traxys Adversary Proceeding, and these debtors remain named parties. Traxys has been unwilling to dismiss the debtors from that litigation to the extent Traxys seeks to liquidate its claims against these debtors and the other related parties.

If the proposed Settlement Agreement is not approved, then the Trustee intends to seek dismissal of the debtors from the Traxys Adversary Proceeding. Traxys has filed proofs of claim in these cases, so the Trustee asserts it is more appropriate to determine the amounts owed by the debtors to Traxys via the claim objection mechanism under FRBP 3007, rather than keep the debtors as defendants in the Traxys Adversary Proceeding. The Trustee believes the Court would likely agree to dismiss the debtors from that adversary proceeding so any remaining questions as

FOX, IMES & CROSBY, LLC
601 S. 10th Street, Suite 202
Las Vegas, Nevada 89101
Tel: (702) 382-1007 · Fax: (702) 382-1921

1    to the amount of the Traxys Claim could be resolved more appropriately through the claim

2    objection process, but this will still require additional motion practice, and might not be granted.

3          Under the proposed Settlement Agreement, by contrast, Traxys will voluntarily dismiss

4    Debtor MPR and Debtor BGD from the Traxys Adversary Proceeding and waive any further claim

5    except as provided by the proposed Settlement Agreement.

6          Faced with the uncertainty and potential impact on the estate and unsecured creditors, the

7    Trustee has considered the likelihood of success of the various claims impacting these estates and

8    he has concluded that the terms of this proposed Settlement Agreement are an appropriate

9    balancing of the interests of the estate and creditors, and that the first A&C Properties element

10    weighs in favor of the proposed settlement.

11        **2.**      **Difficulty of Collection**

12          For the second A&C Properties consideration, the Trustee has not performed a detailed

13    investigation into Traxys' financial condition at this stage because collection from Traxys only

14    becomes a concern if the Trustee proceeds with the Trustee's Avoidance Action. In this case,

15    Traxys has demonstrated the will and the means to vigorously litigate, and the Trustee expects that

16    the litigation to avoid and recover approximately $9,000,000 in transfers from Traxys would be

17    met with similar expense and difficulty. The Trustee expects that any judgment against Traxys

18    would be followed by equally vigorous appeals and collection difficulty since Traxys is a well-

19    funded company located out of state.

20          The other aspects of the proposed settlement, such as reducing the Traxys Claim,

21    recharacterizing the Traxys Claim as unsecured rather than secured, and dismissal from the Traxys

22    Adversary Proceeding, do not implicate collection concerns for the estate, even if the disputes

23    were fully litigated. As such, the Trustee believes this second element still favors settlement over

24    continued litigation. *See* Fox Declaration.

25        **3.**      **Complexity of Litigation and Expense, Inconvenience, and Delay**

26          The protracted and costly litigation in the Traxys Adversary Proceeding and the main

27    bankruptcy case is evident from this Court's docket, and is still far from over. The Trustee is

28    concerned that continued litigation against Traxys could rapidly consume the remaining funds in

FOX, IMES & CROSBY, LLC
601 S. 10ᵗʰ Street, Suite 202
Las Vegas, Nevada 89101
Tel: (702) 382-1007 • Fax: (702) 382-1921

1   the estates, without the corresponding prospect of any meaningful net recovery for creditors.

2       If the proposed Settlement Agreement is not approved, the Trustee will need to proceed

3   with motion practice to try and extricate the estates from the Traxys Adversary Proceeding. Even

4   if that is successful, Traxys has demonstrated that the Trustee will still face the prospect of

5   expensive and protracted litigation objecting to the Traxys Claim, and also pursuing the Trustee's

6   Avoidance Action. As detailed above, none of the litigation brings guaranteed success for the

7   estate. The only certainty is that the litigation will be protracted and expensive.

8       While the Trustee believes the estate has compelling claims and defenses, he has

9   determined that the prospect of immediately reducing the Traxys Claim by nearly $10 million,

10   recharacterizing the claim as unsecured, resolving the Trustee's Avoidance Action, and securing

11   dismissal of Debtor MPR and Debtor BGD from the Traxys Adversary Proceeding is an

12   appropriate course for the estate in this case. As such, the third consideration of expense and delay

13   favors the proposed Settlement Agreement over continued litigation.

14      **4.**     **Paramount Interest of Creditors**

15       As noted, the Trustee believes the estate has compelling claims and defenses, but he has

16   determined that the opportunity to immediately reduce the Traxys Claim by nearly $10 million,

17   recharacterize that claim as unsecured, resolve the Trustee's Avoidance Action, and secure

18   dismissal of Debtor MPR and Debtor BGD from the Traxys Adversary Proceeding is in the best

19   interest of creditors.

20   As such, the fourth <u>A&C Properties</u> element favors approval of the proposed agreement.

21       The Trustee has determined that pursuing litigation in this instance will not bring a better

22   result, and after considering the expense, risk, and delay of litigation, and extent of claims in this

23   case relative to the funds on hand, this proposed Settlement Agreement is in the best interest of the

24   estate and creditors. *See* Fox Declaration.

25   <u>**CONCLUSION**</u>

26       Based upon the foregoing, the Trustee requests that this Motion be granted and that the

27   proposed Settlement Agreement with Traxys North America LLC, set forth in the attached

28   **Exhibit "1,"** be approved pursuant to Fed.R.Bankr.P. 9019.

FOX, IMES & CROSBY, LLC
601 S. 10ᵗʰ Street, Suite 202
Las Vegas, Nevada 89101
Tel: (702) 382-1007 · Fax: (702) 382-1921

1    A proposed form of order is attached to this Motion as **Exhibit "2."**

2    DATED: April 28, 2023.

3                                    /s/ Jason A. Imes
4                                    Jason A. Imes, Esq.
                                     Fox, Imes & Crosby LLC
5                                    601 S. 10th St., Suite 202
                                     Las Vegas, Nevada 89101
6                                    *Attorneys for Troy S. Fox, Chapter 7 Trustee*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fox, Imes & Crosby, LLC
601 S. 10th Street, Suite 202
Las Vegas, Nevada 89101
Tel: (702) 382-1007 · Fax: (702) 382-1921

# EXHIBIT "1"

## SETTLEMENT AGREEMENT AND RELEASE

### I.     PARTIES

This settlement agreement and release (this "Settlement Agreement") is entered into as of April __, 2023, by and between TROY S. FOX, as Chapter 7 Trustee for the jointly administered bankruptcy estates of METAL PARTNERS REBAR, LLC ("MPR"), BGD LV HOLDING, LLC ("BGD"), BRG HOLDING, LLC ("BRG"), BCG OWNCO, LLC ("BCG") (the "Trustee"), on the one hand, and TRAXYS NORTH AMERICA LLC ("Traxys"), on the other hand, with respect to the matters set forth herein (the Trustee, and Traxys are referred to herein individually as a "Party" and collectively as the "Parties").

### II.    RECITALS

This Settlement Agreement is entered into with reference to the following:

A.     On or about March 1, 2018, Traxys entered into a Joint Venture Agreement (the "JVA") with MPR and BGD under which the Parties generally agreed, among other things, that Traxys would purchase and supply rebar raw materials to be used by MPR and BGD to fabricate finished rebar products to be sold by the joint venture with all sales to be invoiced in Traxys' name for direct payment to Traxys.

B.     The JVA generally provided that Traxys was, at all times, the sole owner of all rebar raw materials purchased for the joint venture, all finished rebar products produced by the joint venture, and all accounts receivable generated from sales by the joint venture.

C.     On or about March 1, 2018, and in connection with the JVA, Traxys extended a term loan of $522,256 to BGD (the "BGD Loan"), which BGD used to finance the purchase of certain equipment (the "BGD Equipment") for use at BGD's fabrication facility located at 3101 East Craig Road, North Las Vegas, Nevada 89030.

D.     In connection with the BGD Loan, Traxys and BGD entered into a Loan and Security Agreement under which BGD pledged substantially all of its assets, including the BGD Equipment, as collateral.

E.     In addition to activities occurring under the JVA, Traxys also regularly sold rebar raw materials to MPR for use in its business operations outside of the joint venture.

F.     By the fourth quarter of 2019, MPR had fallen delinquent in payments owed to Traxys for sales of raw materials for use in MPR's business operations outside of the joint venture, and BGD had fallen delinquent in payments owed to Traxys under the BGD Loan.

G.     In or around November 2019, Traxys discovered that millions of dollars in joint venture customer payments, which were owned by Traxys and should have been paid directly to Traxys, had been collected by MPR and deposited in an account at JPMorgan Chase Bank, N.A. ("Chase") and used to pay indebtedness owed by MPR to Chase.

T.S.F.

H.     On or about January 17, 2020, Traxys entered into a Settlement with MPR, BGD, and various affiliated parties (the "January 2020 Settlement") under which, among other things, it was generally agreed (i) MPR would pay to Traxys all joint venture customer funds it had previously collected and promptly forward to Traxys any future joint venture customer payments it might receive, (ii) MPR would make all rebar raw materials and finished rebar products in its possession and owned by Traxys available to be purchased by Intermetal Rebar, L.L.C., which was also a party to the January 2020 Settlement, (iii) BGD would pay all amounts due and owing in connection with the BGD Loan, and (iv) certain accounts payable between Traxys and MPR would be offset, leaveing a net payable to be paid by MPR to Traxys.

I.     MPR and BGD failed and refused to perform their obligations under the January 2020 Settlement.

J.     On April 2, 2020, Traxys filed a complaint in the United States District Court for the Southern District of New York (the "New York Court"), commencing an action (the "New York Action") against MPR, BGD, ADR Rebar, LLC ("ADR"), Jose Carrero ("Carrero"), Intermetal Rebar, LLC ("Intermetal"), and Chase.

K.     On May 11, 2020, Traxys entered into an agreement with MPR, BGD, and Chase (the "May 2020 Agreement") by which those parties agreed, among other things, to segregate and preserve funds collected on account of certain receivables identified therein.

L.     On June 16, 2020 (the "Petition Date"), MPR and BGD, along with BRG and BCG, filed voluntary chapter 11 petitions in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court").

M.     On June 19, 2020, the Bankruptcy Court entered an order directing the joint administration of the chapter 11 cases of MPR, BGD, BRG, and BCG (together, the "Chapter 11 Case") under the chapter 11 case of MPR, Case No. 20-12878.

N.     On September 10, 2020, the New York Court entered an order transferring the New York Action to the United States District Court for the District of Nevada (the "Nevada Court") for automatic referral to the Bankruptcy Court.

O.     On October 5, 2020, Traxys filed similar Proofs of Claim in the chapter 11 cases of MPR [Claim 70], BGD [Claim 2], BRG [Claim 3], and BCG [Claim 5] by which Traxys asserted secured claims in the amount of $33,000,000 based primarily on amounts due to Traxys under the JVA and the January 2020 Settlement (the "Traxys JVA Claim").

P.     On October 5, 2020, Traxys also filed similar Proofs of Claim in the chapter 11 cases of MPR [Claim 72], BGD [Claim 3], BRG [Claim 4], and BCG [Claim 6] by which Traxys asserted a secured claim in the amount of $434,144 based primarily on amounts due to Traxys in connection with the BGD Loan (the "Traxys BGD Loan Claim").

2

Q.     On October 14, 2020, the Bankruptcy Court entered its *Order Authorizing (a) the Sale of Substantially of the Debtors' Assets Free and Clear of Claims, Liens, and Encumbrances, and (b) the Assumption and Assignment of Executory Contracts and Unexpired Leases* (the "Sale Order") in the Chapter 11 case pursuant to which substantially all of the assets of MPR, BGD, BRG, and BCG were subsequently sold and conveyed to JRC OpCo, LLC.

R.     On December 2, 2020, the Bankruptcy Court entered its *Order Granting Debtors' Motion for an Order Approving the Sale of Certain Remaining Equipment in North Las Vegas Facility Free and Clear of Claims, Liens, and Encumbrances, and Waiver of the Stay of Effectiveness of the Order* by which the Bankruptcy Court, among other things, (i) approved the sale of the BGD Equipment for $300,000 free and clear of Traxys' security interest, (ii) ordered that the sale proceeds be paid directly to Traxys, and (iii) approved the allowance of the Traxys BGD Loan Proof of Claim in the amount of $425,476 subject to reduction by the sales proceeds paid to Traxys and subject Traxys' right to seek interest and attorney fees.

S.     On October 14, 2020, while still pending under Chapter 11, the Bankruptcy Court authorized the sale of substantially all the assets of the jointly administered estates [ECF No. 484], and on December 2, 2020, the sale of the remaining equipment was authorized [ECF No. 575].

T.     On January 4, 2021, the Nevada Court entered an order referring the New York Action to the Bankruptcy Court for adjudication as an adversary proceeding [Case No. 21-01005] (the "Adversary Case") in connection with the Chapter 11 Case.

U.     On April 1, 2022 (the "Conversion Date"), the Bankruptcy Court entered an order [ECF No. 739] converting the jointly administered Chapter 11 cases to cases under Chapter 7 (together, the "Chapter 7 Case"), and Trustee Fox was appointed as trustee for the jointly administered estates of MPR, BGD, BRG and BCG [ECF No. 741].

V.     The Trustee has investigated the basis for the Traxys JVA Claim and the Traxys BGD Loan Claim and has concluded that the same are, at least in part, meritorious.

W.     On March 28, 2023, the Trustee filed an Adversary Complaint to Avoid and Recover Transfers pursuant to 11 U.S.C. §§ 544, 547, 548 and 550 and to Disallow Claims pursuant to 11 U.S.C. § 502 [Case No 23-01069] against Traxys (the "Trustee's Adversary Complaint").

X.     To avoid the expense of the litigation, and being fully advised in the matters addressed herein, the Parties now wish to resolve all disputes between them relating to or arising from the Traxys JV Claim, the Traxys BGD Loan Claim, the Chapter 7 Case, or the Trustee's Adversary Complaint on the terms and conditions set forth therein.

## III.   AGREEMENT

The Recitals set forth hereinabove are, by this reference, incorporated into and deemed a part of this Settlement Agreement. For good and valuable consideration of the above recitals, the

receipt and sufficiency of which are hereby acknowledged, including without limitation, the mutual covenants, conditions and promises made herein, and other good and valuable consideration in this Agreement, the Parties hereby agree as follows:

1.  **Bankruptcy Court Approval.** This Settlement Agreement is subject to approval by the Bankruptcy Court. Within seven (7) calendar days following the execution of this Settlement Agreement, the Trustee shall file a motion in the Chapter 7 Case seeking the entry of an order approving this Settlement Agreement and affirming the terms set forth herein pursuant to Bankruptcy Rule 9019, in accordance with Section 7 below. The effective date of this Settlement Agreement (the "Effective Date") shall be the date on which the Bankruptcy Court enters such an order.

2.  **Treatment of the Traxys JVA Claim and the Traxys BGD Loan Claim.** Traxys shall be allowed a general unsecured claim on account of both the Traxys JVA Claim and the Traxys BGD Loan Claim in the aggregate amount of Twenty-Four Million Four Hundred Seventy-Five Thousand Dollars and Zero Cents (U.S.) ($24,475,000.00) which shall be deemed an allowed non-priority general unsecured claims against the estate of MPR and also against the estate of BGD and shall be paid pro rata with other similarly situated claims (the "Revised Traxys Claim"). The parties acknowledge that the total amount distributed to Traxys pursuant to the Revised Traxys Claim from the MPR and BGD bankruptcy estates shall not exceed this agreed claim amount.

3.  **Dismissal of Adversary Proceeding Claims against MPR and BGD.** Within fifteen (15) days after the Effective Date , Traxys and the Trustee shall cause the claims asserted by Traxys against MPR and BGD in the Adversary Case to be dismissed without prejudice. The dismissal of such claims in the Adversary Proceeding shall have no effect whatsoever on, and shall not impair in any way, any other claim or defense asserted by Traxys in relation to any other party to the Adversary Case. Traxys further covenants and agrees that Traxys shall take no action to reinstate or prosecute such dismissed claims against MPR or BGD, or to commence any new action based on such dismissed claims, or to otherwise recover from or against the estate of MPR or the estate of BGD except pursuant to the Revised Traxys Claim.

4.  **Dismissal of Trustee's Adversary Proceeding Claims against Traxys.** Within five (5) days after the Effective Date, the Trustee shall file a notice of voluntary dismissal and such other documents as may be necessary to secure the prompt dismissal with prejudice of the Trustee's Adversary Complaint.

5.  **No Third Party Beneficiaries.** This Settlement Agreement is intended for the sole benefit of the Parties hereto and nothing herein expressed or implied shall give or be construed to give to any person or party, other than the Parties hereto, any legal or equitable right, claim, benefit or remedy of any nature whatsoever, nor may any provision hereof be enforced by any other person or party other than the Parties hereto.

6.  **No Effect on Adversary Case.** Except as between Traxys and MPR and BGD, the compromise and liquidation of the Traxys JVA Claim and the Traxys BGD Loan Claim as provided in this Settlement Agreement shall be entirely without prejudice to and shall not in any way impair or otherwise affect any claim, counterclaim, third-party claim, or defense that has been

or may be asserted in the Adversary Case by Traxys or any other party thereto. To the extent that the compromise and liquidation of the Traxys JVA Claim and the Traxys BGD Loan Claim as provided in this Settlement Agreement is determined to prejudice or impair any claim, counterclaim, third-party claim, or defense that has been or may be asserted in the Adversary Case (except as between Traxys and MPR, BGD, or the Trustee), then at Traxys' election this Settlement Agreement, or such portion hereof that is determined to prejudice or impair any claim, counterclaim, third-party claim, or defense that has been or may be asserted in the Adversary Case (except as between Traxys and MPR, BGD, or the Trustee), shall be deemed to be null and void.

7.    **Bankruptcy Court Approval.** This Settlement Agreement shall be subject to and contingent upon the entry by the Bankruptcy Court of a final, non-appealable order approving this Settlement Agreement pursuant to Fed. R. Bankr. P. 9019 and determining that, except as between Traxys and MPR and BGD, the compromise and liquidation of the Traxys JV Claim and the Traxys BGD Loan Claim as provided in this Settlement Agreement is entirely without prejudice to and does not in any way impair or otherwise affect any claim, counterclaim, third-party claim, or defense that has been or may be asserted in the Adversary Case by Traxys or any other party thereto.

8.    **Release of Claims against Traxys.** As of the Effective Date, the Trustee, as chapter 7 trustee of the bankruptcy estates of MPR, BGD, BRG, and BCG,  hereby fully and forever discharges and releases Traxys, and each of its parents, subsidiaries, officers, directors, shareholders, partners, attorneys, investors, affiliates, predecessors, successors, representatives, insurers, assignees, agents, employees, administrators, and all persons acting by, through or in any way on behalf of Traxys (collectively, the "Released Parties"), from any and all claims, debts, defenses, liabilities, actions, demands, contracts, expenses, damages, and causes of action of any kind or nature, whether at law or in equity, whether known or unknown,  including any and all claims that may be asserted under Bankruptcy Code §§ 544, 547, 548, 549, 550, or 553, that the Trustee now has or may hereafter claim to have by reason of any matter, cause, fact, or thing whatsoever up to and including the Effective Date (the "Released Claims"). The Trustee further covenants and agrees he will not institute or cause to be instituted or continue prosecution of any suit or other form of action or proceeding of any kind or nature whatsoever against any of the Released Parties by reason of, or in connection with, any of the Released Claims. This release shall be binding upon and fully effective against the Trustee, as chapter 7 trustee, and any subsequent chapter 7 trustee, examiner, or other fiduciary that may be appointed in connection with the Chapter 7 Case.

9.    **No Admission of Liability.** This Settlement Agreement is entered into by the Parties for the purpose of compromising and resolving the matters addressed herein.  This Settlement Agreement does not constitute, and shall not be construed as, an admission of the truth or validity of any claim asserted or contention advanced by any Party.

10.    **Dispute Resolution, Jurisdiction, and Venue.** This Settlement Agreement may be enforced by the Bankruptcy Court, which shall retain jurisdiction, at either Party's request, to enforce this Settlement Agreement. In the event the Bankruptcy Court determines, for any reason, that it lacks jurisdiction to enforce this Settlement Agreement, any dispute arising out of or related

to this Settlement Agreement shall be adjudicated by a court of competent jurisdiction in Clark County, Nevada.

11.    **Attorneys' Fees.**  If any action is brought to enforce this Settlement Agreement, or is brought in connection with any dispute arising out of this Settlement Agreement or the claims which are the subject of this Settlement Agreement, the prevailing Party or Parties shall be entitled to recover damages, attorneys' fees and other costs incurred in such litigation which they may prove are the direct and proximate result of any breach hereof in addition to any other relief which that Party or Parties may be entitled to by law.

12.    **Governing Law.**  The Parties agree that this Settlement Agreement, and any matter related to, arising from, or in any way associated or related to this Settlement Agreement, shall be governed by and shall be construed in accordance with the laws of Nevada, without regard to any choice of law or conflict of laws principles.

13.    **No Party Deemed Drafter.**  This Settlement Agreement shall not be construed in favor of or against any Party hereto, regardless of which Party initially drafted it, it being recognized that because of the arm's-length negotiations between counsel for each of the Parties resulting in this Settlement Agreement, each Party to this Settlement Agreement has contributed substantially and materially to the preparation of it.  Because each party and his, her or its counsel cooperated in the drafting and preparation of this Settlement Agreement, this Settlement Agreement shall be considered jointly drafted by counsel for all Parties.

14.    **Severability.**  If any term or provision, or portion thereof, of this Settlement Agreement is declared by the Bankruptcy Court or any other tribunal to be illegal or invalid, the validity of the remaining provisions or portions thereof shall not be affected thereby, and the illegal or invalid provisions or portions thereof shall be deemed not a part of this Settlement Agreement.

15.    **Entire Agreement.**  This Settlement Agreement sets forth the Parties' entire understanding in connection with the subject matter of this Settlement Agreement and supersedes and replaces all prior negotiations and agreements (written or oral and executed or unexecuted), communications, understandings, or statements to the contrary.  It is expressly acknowledged and recognized by the Parties that there are no other oral agreements or understandings between the Parties.  Each of the Parties also acknowledges that no other Party, nor any agent of or attorney for such Party, has made any promise, representation or warranty, express or implied, written or oral, not otherwise contained in this Settlement Agreement to induce any Party to execute this Settlement Agreement.  The Parties further acknowledge that they are not executing this Settlement Agreement in reliance on any promise, representation or warranty not contained in this Settlement Agreement.

16.    **Modification Only in Writing; No Waiver.**  No delay or omission by any Party to exercise any right or remedy occurring upon any default or breach by another Party with respect to any of the terms of this Settlement Agreement shall impair any such right or remedy or be construed to be a waiver thereof.  A waiver by any Party of any of the covenants, conditions, or agreements to be performed by the other Party shall not be construed to be a waiver of any succeeding breach thereof or of any covenant, condition, or agreement contained in this Settlement

Agreement. This Settlement Agreement may only be modified by a writing signed by all Parties, or duly authorized representative of each Party. No waiver of any term or condition of this Settlement Agreement shall be effective unless in writing and signed by all Parties.

17.    **Authority to Bind.** Each person signing this Settlement Agreement represents and warrants that he or she has the authority to bind to the terms and conditions set forth in this Settlement Agreement each person or entity on whose behalf he or she executes this Settlement Agreement.

18.    **Successors.** This Settlement Agreement shall be binding on and inure to the benefit of all Parties to the Settlement Agreement and their respective successors, assigns, and heirs.

19.    **Further Actions.** The Parties hereto shall, without further consideration, execute and deliver such other documents and take such other action as may be necessary to consummate the terms and conditions of this Settlement Agreement.

20.    **Headings.** The headings of the sections and subsections of this Settlement Agreement are for convenience of reference only and shall not be of any effect in construing the meanings of any provision of this Settlement Agreement.

21.    **Counterparts.** This Settlement Agreement may be executed in one or more counterparts, each of which, when so executed and delivered, shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement. Each Party's signature hereto will signify acceptance of, and agreement to, the terms and provisions contained in this Settlement Agreement. Facsimile and/or electronic signatures shall be deemed originals for the purposes of this Settlement Agreement.

*[The remainder of this page is blank. The signature page follows.]*



Dated this ___ day of _____, 2023

**TRAXYS NORTH AMERICA LLC**

By: _____
Name: _____
Title: _____

Dated this 14 day of April, 2023

**BGD LV HOLDING, LLC**

By: _____
Name: Troy S. Fox
Title: Chapter 7 Trustee

Dated this 14 day of April, 2023

**BCG OWNCO, LLC**

By: _____
Name: Troy S. Fox
Title: Chapter 7 Trustee

Dated this 14 day of April, 2023

**METAL PARTNERS REBAR, LLC**

By: _____
Name: Troy S. Fox
Title: Chapter 7 Trustee

Dated this 14 day of April, 2023

**BRG HOLDING, LLC**

By: _____
Name: Troy S. Fox
Title: Chapter 7 Trustee

20230414 Trustee Settlement Agreement - Clean

8

# EXHIBIT "2"

1

2

3

4

5

6

7    Jason A. Imes Esq., NV Bar No. 7030
FOX, IMES & CROSBY LLC
8    601 S. 10th Street, Suite 202
Las Vegas, Nevada 89101
9    Telephone:    (702) 382-1007
Facsimile:    (702) 382-1921
10    E-Mail:    info@FICLegal.com
*Attorneys for Troy S. Fox, Chapter 7 Trustee*

11                **UNITED STATES BANKRUPTCY COURT**

12                      **DISTRICT OF NEVADA**

| 13 | In re METAL PARTNERS REBAR, LLC, | Case No.  BK-S-20-12878-ABL **(Lead Case)** |
|----|----|----|
| 14 | Debtor. | **Jointly Administered with:** |
| 15 | | Case No. BK-S-20-12876-ABL |
| 16 | ☒ Affects Metal Partners Rebar, LLC | Case No. BK-S-20-12879-ABL |
| 16 | ☐ Affects BGD LV Holding, LLC | Case No. BK-S-20-12880-ABL |
| 17 | ☐ Affects BRG Holding, LLC | |
| 17 | ☐ Affects BCG Ownco, LLC | Chapter 7 |
| 18 | | **Adversary Proceeding: 23-01069-ABL** |
| 19 | | |
| 20 | TROY S. FOX, CHAPTER 7 TRUSTEE, | **[ PROPOSED ] ORDER GRANTING** |
| 20 | | **TRUSTEE'S MOTION TO APPROVE** |
| 21 | Plaintiff, | **SETTLEMENT AGREEMENT WITH** |
| 22 | v. | **TRAXYS NORTH AMERICA LLC** |
| 22 | | **(FRBP 9019)** |
| 23 | TRAXYS NORTH AMERICA LLC, | Hearing Date:  June 13, 2023 |
| 24 | Defendant. | Hearing Time:  10:00 a.m. |

25

26        The Trustee's *Motion to Approve Settlement Agreement with Traxys North America LLC*

27    [ECF No. ____ ] (the "Motion"), having come before this Court on the 13th day of June, 2023;

28    TROY S. FOX (the "Trustee"), Chapter 7 Trustee for the jointly administered bankruptcy estates

FOX, IMES & CROSBY, LLC
601 S. 10th Street, Suite 202
Las Vegas, Nevada 89101
Tel: (702) 382-1007 • Fax: (702) 382-1921

of Metal Partners Rebar, LLC, BGD LV Holding, LLC, BRG Holding, LLC, and BCG Ownco, LLC, appearing by and through his counsel, Jason A. Imes, Esq., of the law firm of Fox, Imes & Crosby, LLC; other parties appearing as noted on the record; the Court having reviewed and considered the Motion, and there being no opposition; the Court having made its findings of fact and conclusions of law upon the record which are incorporated herein pursuant to Federal Rules of Bankruptcy Procedure 9014(c) and 7052, and for good cause appearing,

     **IT IS HEREBY ORDERED** that the Trustee's Motion is GRANTED; and

     **IT IS FURTHER ORDERED** that the Trustee's proposed Settlement Agreement with Traxys North America LLC, set forth in the attached **Exhibit "1,"** is hereby APPROVED pursuant to Fed.R.Bankr.P. 9019.

Submitted by:

_____
Jason A. Imes, Esq.
Fox, Imes & Crosby, LLC
601 S. 10ᵗʰ Street, Suite 202
Las Vegas NV 89101
*Counsel for Troy S. Fox, Chapter 7 Trustee*

Fox, Imes & Crosby, LLC
601 S. 10ᵗʰ Street, Suite 202
Las Vegas, Nevada 89101
Tel: (702) 382-1007 · Fax: (702) 382-1921

### LR 9021 CERTIFICATION

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐    The court waived the requirement of approval under LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the motion.

☐    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated above.

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objection to the form or content of the order.

_____

Jason A. Imes, Esq.
FOX, IMES & CROSBY, LLC

### # #

FOX, IMES & CROSBY, LLC
601 S. 10ᵗʰ Street, Suite 202
Las Vegas, Nevada 89101
Tel: (702) 382-1007 · Fax: (702) 382-1921