Jason A. Imes Esq., NV Bar No. 7030
FOX, IMES & CROSBY LLC
601 S. 10th Street, Suite 202
Las Vegas, Nevada 89101
Telephone:   (702) 382-1007
Facsimile:    (702) 382-1921
E-Mail:        info@FICLegal.com
*Attorneys for Troy S. Fox, Chapter 7 Trustee*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re METAL PARTNERS REBAR, LLC, <br><br>                                                 Debtor. <br><br> ☒ Affects Metal Partners Rebar, LLC <br> ☐ Affects BGD LV Holding, LLC <br> ☐ Affects BRG Holding, LLC <br> ☐ Affects BCG Ownco, LLC | Case No. BK-S-20-12878-ABL **(Lead Case)** <br><br> **Jointly Administered with:** <br><br> Case No. BK-S-20-12876-ABL <br> Case No. BK-S-20-12879-ABL <br> Case No. BK-S-20-12880-ABL <br><br> Chapter 7 |
| TROY S. FOX, CHAPTER 7 TRUSTEE, <br><br>                                              Plaintiff, <br><br> v. <br><br> TRAXYS NORTH AMERICA LLC, <br><br>                                              Defendant. | **Adversary Proceeding: 23-01069-ABL** <br><br> **DECLARATION OF TROY S. FOX SUPPORTING TRUSTEE'S MOTION TO APPROVE SETTLEMENT AGREEMENT WITH TRAXYS NORTH AMERICA LLC (FRBP 9019)** <br><br> Hearing Date:  June 13, 2023 <br> Hearing Time:  10:00 a.m. |

I, TROY S. FOX, do declare the following under penalty of perjury:

1. I am over the age of 18 and competent to testify as to the matters set forth herein.

2. Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.

3. I am the duly appointed Chapter 7 Trustee for the jointly administered bankruptcy estates of Metal Partners Rebar, LLC, BGD LV Holding, LLC, BRG Holding, LLC, and BCG Ownco, LLC, and I make this Declaration in support of my *Motion to Approve Settlement Agreement with Traxys North America LLC* (the "Motion") filed concurrently with this Declaration.

4. Any capitalized terms not otherwise defined in this Declaration are defined as set forth in my Motion.

5. I am seeking approval of a settlement agreement negotiated with Traxys North America LLC ("Traxys") following a settlement conference before the Honorable Gregg W. Zive to resolve Traxys' various proof of claims filed against the bankruptcy estates, Traxys' pending claims against debtors Metal Partners Rebar, LLC ("MPR"), and BGD LV Holding, LLC ("BGD") in its related adversary proceeding captioned as Traxys North America LLC v. Metal Partners Rebar LLC, et al., Adv. Pro. No. 21-01005-ABL (the "Traxys Adversary Proceeding") and my adversary proceeding against Traxys for avoidance and recovery of transfers and disallowance of claims captioned as Troy S. Fox, Trustee v. Traxys North America, LLC (Adv. Proc No. 23-01069-ABL) (the "Trustee's Avoidance Action").

6. The terms of the proposed settlement agreement (the "Settlement Agreement") are attached as **Exhibit "1"** to the Motion, and in general terms, the proposed Settlement Agreement provides:

   A. Traxys' proofs of claim will be deemed an allowed unsecured claim against the MPR and BGD bankruptcy estates in the sum of $24,475,000.00 which represents a reduction of $9,959,144.00 from Traxys' original filed claims that total $33,434,144.00;

   B. Traxys had asserted its claims were secured, but has agreed that its claim will be now be treated as an <u>un</u>secured non-priority claim for purposes of distribution with similarly situated creditors; and

   C. Upon approval, Traxys will dismiss MPR and BGD from the Traxys Adversary Proceeding and waive and release any other related claims against the respective estates, and the Trustee will dismiss the Trustee's Avoidance Action and waive and release any related claims.

7. Traxys alleges in the Traxys Adversary Proceeding that on or about March 1, 2018, Traxys entered into a Joint Venture Agreement (the "JVA") with MPR and BGD under which those parties generally agreed, among other things, that Traxys would purchase and supply rebar

raw materials to be used by MPR and BGD to fabricate finished rebar products to be sold by the joint venture with all sales to be invoiced in Traxys' name for direct payment to Traxys.

8. Upon information and belief, the JVA generally provided that Traxys was the sole owner of all rebar raw materials purchased for the joint venture, all finished rebar products produced by the joint venture, and all accounts receivable generated from sales by the joint venture.

9. Upon information and belief, on or about March 1, 2018, and in connection with the JVA, Traxys extended a term loan of $522,256 to BGD (the "BGD Loan"), which BGD used to finance the purchase of certain equipment (the "BGD Equipment") for use at BGD's fabrication facility located in North Las Vegas, Nevada. In connection with the BGD Loan, Traxys and BGD entered into a Loan and Security Agreement under which BGD pledged substantially all of its assets, including the BGD Equipment, as collateral.

10. In addition to activities occurring under the JVA, Traxys asserts it also sold rebar raw materials to MPR for use in its business operations outside of the joint venture.

11. Traxys has alleged that by the fourth quarter of 2019, MPR had fallen delinquent in payments owed to Traxys for sales of raw materials for use in MPR's business operations outside of the joint venture, and BGD had fallen delinquent in payments owed to Traxys under the BGD Loan.

12. Traxys has alleged that in or around November 2019, Traxys concluded that millions of dollars in joint venture customer payments should have been paid directly to Traxys but were collected by MPR and deposited in an account at JPMorgan Chase Bank, N.A. ("Chase") and used to pay indebtedness owed by MPR to Chase.

13. I am aware that on or about January 17, 2020, Traxys entered into a Settlement with MPR, BGD, and various affiliated parties (the "January 2020 Settlement") under which, among other things, it was generally agreed (i) MPR would pay to Traxys all joint venture customer funds it had previously collected and promptly forward to Traxys any future joint venture customer payments it might receive, (ii) MPR would make all rebar raw materials and finished rebar products in its possession and owned by Traxys available to be purchased by

Intermetal Rebar, L.L.C., which was also a party to the January 2020 Settlement, (iii) BGD would pay all amounts due and owing in connection with the BGD Loan, and (iv) certain accounts payable between Traxys and MPR would be offset, leaving a net payable to be paid by MPR to Traxys.

14. Traxys alleges that MPR and BGD failed and refused to perform their obligations under the January 2020 Settlement. I have been advised that on April 2, 2020, Traxys filed a complaint in the United States District Court for the Southern District of New York (the "New York Court"), commencing an action (the "New York Action") against MPR, BGD, ADR Rebar, LLC ("ADR"), Jose Carrero ("Carrero"), Intermetal Rebar, LLC ("Intermetal"), and Chase.

15. Upon information and belief, on May 11, 2020, Traxys entered into an agreement with MPR, BGD, and Chase (the "May 2020 Agreement") by which those parties agreed, among other things, to segregate and preserve funds collected on account of certain receivables identified therein.

A.  **MPR and related Entities File for Bankruptcy Protection in Nevada**

16. On June 16, 2020 (the "Petition Date"), MPR and BGD, along with BRG Holding, LLC ("BRG"), and BCG Ownco, LLC ("BCG"), filed voluntary chapter 11 petitions in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court").

17. On June 19, 2020, the Bankruptcy Court entered an order directing the joint administration of the chapter 11 cases of MPR, BGD, BRG, and BCG (together, the "Chapter 11 Case") under the chapter 11 case of MPR, Case No. 20-12878-ABL.

18. It appears that on September 10, 2020, the New York Court entered an order transferring the New York Action to the United States District Court for the District of Nevada (the "Nevada Court") for automatic referral to the Bankruptcy Court.

19. On October 5, 2020, Traxys filed similar Proofs of Claim in the chapter 11 cases of MPR [Claim 70], BGD [Claim 2], BRG [Claim 3], and BCG [Claim 5] by which Traxys asserted secured claims in the total sum of $33,000,000 based primarily on amounts allegedly owed to Traxys under the JVA and the January 2020 Settlement (the "Traxys JVA Claim").

20. On October 5, 2020, Traxys also filed similar Proofs of Claim in the chapter 11 cases of MPR [Claim 72], BGD [Claim 3], BRG [Claim 4], and BCG [Claim 6] by which Traxys asserted a secured claim in the amount of $434,144 based primarily on amounts allegedly owed to Traxys in connection with the BGD Loan (the "Traxys BGD Loan Claim").

21. On October 14, 2020, the Bankruptcy Court entered its *Order Authorizing (a) the Sale of Substantially of the Debtors' Assets Free and Clear of Claims, Liens, and Encumbrances, and (b) the Assumption and Assignment of Executory Contracts and Unexpired Leases* [ECF No. 484] (the "Sale Order") in the Chapter 11 case pursuant to which substantially all of the assets of MPR, BGD, BRG, and BCG were subsequently sold and conveyed to JRC OpCo, LLC.

22. On December 2, 2020, the Bankruptcy Court entered its *Order Granting Debtors' Motion for an Order Approving the Sale of Certain Remaining Equipment in North Las Vegas Facility Free and Clear of Claims, Liens, and Encumbrances, and Waiver of the Stay of Effectiveness of the Order* [ECF No. 575] (the "Equipment Sale Order").

23. Pursuant to the Equipment Sale Order, the Bankruptcy Court, among other things, (i) approved the sale of the BGD Equipment for $300,000 free and clear of Traxys' security interest, (ii) ordered that the sale proceeds be paid directly to Traxys, and (iii) approved the allowance of the Traxys BGD Loan Proof of Claim in the amount of $425,476 subject to reduction by the sales proceeds paid to Traxys and subject Traxys' right to seek interest and attorney fees.

24. Upon information and belief, on January 4, 2021, the Nevada Court entered an order referring the New York Action to the Bankruptcy Court for adjudication as an adversary proceeding [Case No. 21-01005-ABL] (the "Traxys Adversary Case") in connection with the Chapter 11 Case.

25. On April 1, 2022 (the "Conversion Date"), the Bankruptcy Court entered an order [ECF No. 739] converting the jointly administered Chapter 11 cases to cases under Chapter 7 (together, the "Chapter 7 Case"), and I was appointed as trustee for the jointly administered estates of MPR, BGD, BRG and BCG [ECF No. 741].

26. I have investigated the basis for the Traxys JVA Claim and the Traxys BGD Loan Claim and concluded that the same are, at least in part, meritorious.

27. On March 28, 2023, my counsel filed an *Adversary Complaint to Avoid and Recover Transfers pursuant to 11 U.S.C. §§ 544, 547, 548 and 550 and to Disallow Claims pursuant to 11 U.S.C. § 502* [Adversary Proceeding No. 23-01069-ABL] against Traxys (the "Trustee's Adversary Complaint") on my behalf.

28. To avoid the expense of continued litigation, and being fully advised in the matters addressed herein, Traxys and I have negotiated a compromise and wish to resolve all disputes between them relating to or arising from the Traxys JV Claim, the Traxys BGD Loan Claim, the Chapter 7 Case, the Traxys Adversary Proceeding, and/or the Trustee's Adversary Complaint on the terms and conditions set forth in the proposed Settlement Agreement attached to the Motion as **Exhibit "1"**.

29. Weighing the relevant factors as set forth in the Motion, I have determined in my business judgment that this proposed Settlement Agreement satisfies the A & C Properties factors and is in the best interest of the estate and creditors.

30. I have reviewed the available materials and information and concluded Traxys has demonstrated some justifiable claims against the Debtors, but the total amounts claimed ($33,434,144.00) warranted further scrutiny. I have been advised that the Unsecured Creditors Committee reached a similar conclusion during the Chapter 11 phase of this case and had worked extensively with Traxys to review and adjust the claims.

31. The first component of the proposed Settlement Agreement is a reduction of the Traxys JVA Claim and the Traxys BGD Loan Claim (collectively the "Traxys Claim") down to an aggregate claim of $24,475,000, which represents a reduction of $9,959,144. I have concluded that Traxys has at least made a prima facie justification for allowance of a claim in the reduced aggregate sum of $24,475,000, and determined there is also a tangible risk that the Court could conclude the Trayxs Claim as filed meets the standard for allowance, which could in turn result in a substantially larger claim against the Debtors' bankruptcy estates. As such, I have concluded in my business judgment that litigating against Traxys to try and further reduce these numbers is unlikely to result in a higher net benefit for the estate and creditors.

32. The second component of the proposed Settlement Agreement is a recharacterization of the Traxys Claim from secured to general non-priority unsecured. I believe this will accordingly provide more funds for distribution to other non-priority unsecured creditors. I am aware that Traxys has provided documents indicating a secured interest in a substantial portion of the Debtors' assets, and these filings create a strong indication that Traxys may have properly perfected a secured claim in the assets of Debtor MPR. I have determined there is still a tangible risk that the Court could conclude Traxys has a secured claim in other assets which would in turn diminish the funds available for other unsecured claimants. I believe the recharacterization of the Traxys Claim to unsecured will result in a benefit to the other unsecured creditors of this estate by making more assets available for distribution.

33. The third component of the proposed Settlement Agreement will resolve the Trustee's Avoidance Action against Traxys for avoidance and recovery of transfers under 11 U.S.C. § 544, 547, 548 and 550 and for disallowance of claims pursuant to § 502. My counsel and I have not identified any substantial transfers from Debtor MPR to Traxys during the 90-day pre-petition lookback period in the banking records or accounting materials, and none are disclosed in the schedules. I have identified numerous post-petition transfers to Traxys, but it appears these transfers were authorized by the Court and I have determined there is no benefit to pursuing recovery of these transfers pursuant to 11 U.S.C. §549.

34. My counsel and I have identified, however, at least $9,849,345.38 transferred by Debtor MPR to Traxys during the 1-year preference lookback period for insiders. I have considered that Traxys has asserted it holds a secured claim which could mean the subject transfers do not meet the threshold definition of avoidable preferential transfers under § 547(b)(5). I have alleged that Traxys could be considered a "non-statutory insider" but it is uncertain if the Court would agree. Without such a finding, I would would be limited to the 90-day pre-petition lookback period for Traxys which is devoid of transfers. Based on these considerations, I have concluded that dismissing the Trustee's Avoidance Action as an additional condition of this proposed Settlement Agreement is consistent with the interests of creditors.

35. The fourth component of the proposed Settlement Agreement is dismissal of Debtor MPR and Debtor BGD as defendants from the Traxys Adversary Proceeding. If the proposed Settlement Agreement is not approved, then I intend to seek dismissal of the debtors from the Traxys Adversary Proceeding. Traxys has filed proofs of claim in these cases, so I assert it is more appropriate to determine the amounts owed by the Debtors to Traxys via the claim objection mechanism under FRBP 3007, rather than keep the debtors as defendants in the Traxys Adversary Proceeding. I believe the Court would likely agree to dismiss the debtors from that adversary proceeding so any remaining questions as to the amount of the Traxys Claim could be resolved more appropriately through the claim objection process, but this will still require additional motion practice, and might not be granted. Under the proposed Settlement Agreement, by contrast, Traxys will voluntarily dismiss Debtor MPR and Debtor BGD from the Traxys Adversary Proceeding and waive any further claim except as provided by the proposed Settlement Agreement, so I have concluded this is appropriate and in the best interest of the estate and creditors.

36. Faced with the uncertainty and potential impact of continued litigation on the estate and unsecured creditors, I have considered the likelihood of success of the various claims impacting these estates and I have determined that the terms of this proposed Settlement Agreement are an appropriate balancing of the interests of the estate and creditors.

37. I have not performed a detailed investigation into Traxys' financial condition at this stage because collection from Traxys only becomes a concern if I proceed with the Trustee's Avoidance Action. In this case, Traxys has demonstrated the will and the means to vigorously litigate, and I expect that the litigation to avoid and recover approximately $9,000,000 in transfers from Traxys would be met with similar expense and difficulty. I believe that any judgment against Traxys would be followed by equally vigorous appeals and collection difficulty since Traxys is a well-funded company and is based out of state. The other aspects of the proposed settlement, such as reducing the Traxys Claim, recharacterizing the Traxys Claim as unsecured rather than secured, and dismissal from the Traxys Adversary Proceeding, do not implicate collection concerns for the

1  estate, even if the disputes were fully litigated. As such, I have concluded that considerations of
2  collection difficulty favor settlement over continued litigation.

3      38.    I have also considered the complexity of the pending litigation, and the attendant
4  expense, inconvenience, and delay. The protracted and costly litigation in the Traxys Adversary
5  Proceeding and the main bankruptcy case is evident from this Court's docket, and is still far from
6  over. I am concerned that continued litigation against Traxys could rapidly consume the remaining
7  funds in the estates, without the corresponding prospect of any meaningful net recovery for
8  creditors.

9      39.    If the proposed Settlement Agreement is not approved, I will need to proceed with
10 motion practice to try and extricate the estates from the Traxys Adversary Proceeding. Even if that
11 is successful, Traxys has demonstrated that I will still face the prospect of expensive and
12 protracted litigation objecting to the Traxys Claim, and also pursuing the Trustee's Avoidance
13 Action. While I believe the estates have compelling claims and defenses, I have determined that
14 the prospect of immediately reducing the Traxys Claim by nearly $10 million, recharacterizing the
15 claim as unsecured, resolving the Trustee's Avoidance Action, and securing dismissal of Debtor
16 MPR and Debtor BGD from the Traxys Adversary Proceeding is an appropriate course for the
17 estate in this case, and I have concluded that the third consideration of expense and delay favors
18 the proposed Settlement Agreement over continued litigation.

19     40.    For the reasons set forth above, I have concluded that the proposed Settlement
20 Agreement advances the paramount interest of creditors. The claims against the estate will be
21 substantially reduced, and recharacterized as unsecured claims, and I do not think pursuing further
22 litigation on these matters will bring a better result.

23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

41. After considering the expense, risk, and delay of litigation, and extent of claims in this case relative to the funds on hand, I have concluded this proposed Settlement Agreement is in the best interest of the estate and creditors.

DATED: April 28, 2023

/s/ *Troy S. Fox*
Troy S. Fox